**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

PRECIOUS R. JOHNSON,

         *Plaintiff*,

*v*.

COMMISSIONER OF SOCIAL SECURITY,

         *Defendant*.

_____/

CASE NO. 17-10852

DISTRICT JUDGE GEORGE CARAM STEEH

MAGISTRATE JUDGE PATRICIA T. MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS
MOTIONS FOR SUMMARY JUDGMENT (Docs. 16, 18)**

## I.   RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Johnson is not disabled. Accordingly, **IT IS RECOMMENDED** that Johnson's Motion for Summary Judgment, (Doc. 16), be **DENIED**, the Commissioner's Motion, (Doc. 18), be **GRANTED**, and this case be **AFFIRMED**.

## II.   REPORT

### A.   Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff Precious R. Johnson's ("Johnson") claim for Disability Insurance

1

Benefits ("DIB") under Title II, 42 U.S.C. § 401 *et seq.* (Doc. 3). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 16, 18).

On October 15, 2013, Johnson filed an application for DIB, alleging a disability onset date of June 4, 2013. (Tr. 212-14). The Commissioner denied his claim. (Tr. 129-43). Johnson then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on August 14, 2015 before ALJ Henry Perez, Jr. (Tr. 101-28).  The ALJ issued a decision on September 4, 2015, finding Johnson not disabled. (Tr. 86-100). On January 26, 2017, the Appeals Council denied review, (Tr. 1-7), and Johnson filed for judicial review of that final decision on April 6, 2017. (Doc. 1).

###    B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not

"try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and

3

> meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two (20 C.F.R.

404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Johnson not disabled. (Tr. 89-96). At Step One, the ALJ found that Johnson last met the insured status requirements of the Social Security Act on December 31, 2018, and had not engaged in substantial gainful activity in the interval between his alleged onset date of June 4, 2013 and his date last insured. (Tr. 91). At Step Two, the ALJ concluded that the following impairments qualified as severe: cervical degenerative disc disease; dysfunction of his left-shoulder joint, osteoarthritis, and hypertension. (*Id.*). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 91-92). Thereafter, the ALJ found that during the relevant time period Johnson had the residual functional capacity ("RFC") to perform light work except

> never overhead reaching with the left upper extremity; occasional climbing ramps and stairs but never climb ladders and scaffolds; can occasionally kneel, crouch, stoop and crawl.

(Tr. 92-95). At Step Four, the ALJ found Johnson capable of performing his past relevant work, therefore declining to continue to Step Five. (Tr. 95-96).

### E.      Administrative Record

#### 1.      Medical Evidence

The Court has reviewed Johnson's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.      Application Reports and Administrative Hearing

##### i.      Function Report

On January 30, 2014, Johnson filled out a Function Report which appears in the administrative record. (Tr. 249-59). In it, he noted living alone in a house, and highlighted difficulty the following activities: lifting, bending, standing, reaching, and kneeling. (Tr. 251). His injuries caused problems "falling and staying asleep because of pain, numbness and tingling. I have bad dreams." (Tr. 252). They also caused problems dressing, bathing, caring for his hair, shaving, feeding himself, and using the toilet. (*Id.*). Each day he prepared his own meals, but "now I make simple meals because I have difficulty standing for prolonged periods of time, bending and reaching to get items out of the cabinets, lifting and carrying heavy pots and pans, chopping ingredients and stirring food." (Tr. 253). Once a week, he would dust for one hour with breaks. (*Id.*).

Johnson ventured outside a few times a month, but could not "go out alone since I rely on others for transportation." (Tr. 254). When able to find a ride—about twice a month—he shopped for groceries. (Tr. 255). "I get a cart and lean on it for support because I have difficulty walking and standing for long periods of time. I ask for assistance to get items off the shelves because I have trouble bending and reaching. I rely on family to help

6

me bring in the groceries because I am limited in my ability to lift heavy items." (*Id.*). He retained the ability to pay bills, count change, handle a savings account, and use a checkbook or money orders. (*Id.*). In his free time, he enjoyed watching television and reading. (*Id.*). "I need to shift positions frequently because I have difficulty sitting for long periods. I need to go back and reread things because I forget what I read." (*Id.*). About once a week he visited with family and friends, and spoke with family and friends on the phone two to three times a week. (Tr. 256). Nevertheless, he did not regularly attend social activities. (*Id.*).

Summarizing his alleged disability, Johnson noted "pain and muscle spasms in my left shoulder and back; limited range of motion and weakness in my left shoulder and back; tingling and numbness in my left leg, arm and hand; body stiffness; blurry vision; short term memory loss . . . ." (*Id.*). The medication he took for these conditions itself caused drowsiness and "frequent use of the restroom." (*Id.*). He relied on a cane to walk, and could only walk about twenty feet before needing to stop and rest. (Tr. 257-58).

### ii.       Johnson's Testimony at the Administrative Hearing

In response to the ALJ's opening line of questioning, Johnson noted that he stopped working because he was in a motor-vehicle accident. (Tr. 105). Before the accident, he had worked steadily for over twenty years in the same position, which required performing duties of a machine operator for a dowel as well as a visual inspector of parts. (Tr. 106-08). The work had required him to lift fifty pounds above his shoulders. (Tr. 108). After the accident, he tried to work again for about eight months but "I couldn't bend, couldn't lift, couldn't keep up with production. And, I just couldn't do it." (Tr. 110). Ultimately, he

"was terminated, because they made a decision that, you know, from my accident and the surgery that I couldn't . . . do what . . . needed to be done." (Tr. 124).

Soon after the accident Johnson had surgery on his left shoulder, and at the time of the hearing he was "[s]till having problems," even after engaging in physical therapy. (*Id.*). As a result, he had difficulty gripping or lifting anything with it, and could not lean or lay on it. (Tr. 111). And because driving his car required two hands, he could no longer drive. (*Id.*).

The car accident also left him with "bulging discs right above my tailbone"—or to be more exact, a herniated disc. (Tr. 113). At one point, he had tried injection treatment, but suffered a "real bad reaction from it" and decided not to continue. (*Id.*). He shied away from any opioids for dealing with the pain, opting instead for "Tylenol Threes here and there." (Tr. 115).

Because Johnson avoided household chores, his daughter came by "at least once a week" with her kids to help out, as did other family members. (Tr. 116-17). He could sit or stand no longer than twenty minutes before pain "shoots down my leg, start cramping up." (Tr. 120). When this happened, he needed to adjust positions and massage his legs for several minutes before resuming sitting or standing. (*Id.*). When walking, he presented with a limp. (Tr. 121). He could lift no more than ten pounds when using both arms. (Tr. 122).

### iii.    The VE's Testimony at the Administrative Hearing

Asked to categorize Johnson's past work, the VE classified him as "a production worker," light per the DOT but medium as performed. (Tr. 125). The ALJ then posed the following hypothetical:

Taking claimant's age, education, work experience into account, assume that such a person has an exertional limitation lifting and carrying 20 pounds occasionally, 10 pounds frequently, sitting, standing, walking, six of eight hours, pushing and pulling as much as he can lift and carry. There's no reaching overhead with the left upper extremity. Occasionally climbing ramps and stairs. No climbing ladders and scaffolds. Stooping is occasional, kneeling is occasional, crouching and crawling are occasional. And, putting this individual at the unskilled level, could such a person be expected to perform claimant's past relevant work?

(Tr. 125-26). The VE indicated that such an individual could perform Johnson's past work as generally performed, but *not* as Johnson had performed it. (Tr. 126). Further, significant such jobs would exist at the sedentary level. (*Id.*). Hedging this prediction somewhat, the VE indicated that if the ALJ considered Johnson's testimony as to his medication side effects credible, and that "was to lead him . . . to be off task more than 15 percent of the day, that would be work preclusive." (*Id.*). The VE provided as well that the ALJ's hypothetical, and the VE's responses to it, were consistent with the DOT. (*Id.*). Counsel for Johnson offered "nothing further." (Tr. 127).

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).   Both    "acceptable"

9

and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.*. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions

entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record

and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and

12

persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain;
(vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

13

### G.      Analysis

Johnson furnishes four discrete arguments in his Motion for Summary Judgment: (1) the ALJ's Step Four finding lacks support from substantial evidence because he identifies a "composite job" as suitable work, (Doc. 16 at ID 607-13); (2) the ALJ improperly evaluated the opinion of consultative examiner Dr. Montasir, (Doc. 16 at ID 613-16); (3) the ALJ's credibility finding lacks support, (Doc. 16 at ID 616-19); and (4) new and material evidence warrants remand under Sentence Six of 42 U.S.C. § 405(g), (Doc. 16 at ID 619-24). I address each argument in turn.

### 1.      Whether "Inspector" Is a Composite Job

Johnson first avers an error in the ALJ's Step-Four finding renders his analysis without the support of substantial evidence. In his view, the ALJ made "contradictory" findings in writing that Johnson could perform past relevant work as an inspector, as well as that the VE testified he could perform "'the past work as a packer.'" (Doc. 16 at ID 607-08) (quoting (Tr. 93)). In actuality, Johnson contends, he performed a composite job entailing duties of "*both* an inspector *and* a production worker." (Doc. 15 at ID 608). Such a job had no counterpart in the DOT, and thus substantial evidence does not endorse the ALJ's finding that Johnson could perform his past work as generally performed.

A claimant is found not disabled at Step Four if the Commissioner determines she can return to her past work either as it was actually performed or as it is generally performed in the national economy. SSR 92-61; 20 C.F.R. § 404.1560(b)(2). "The relevant inquiry is whether Plaintiff can return to her past *type* of work, not just her former job." *Yournet v. Comm'r of Soc. Sec.*, No. 07-13087, 2008 WL 3833685, at *6 (E.D. Mich. Aug.

13, 2008). Unlike jobs described in the DOT, however, a composite job has "significant elements of two or more occupations and, as such, have no counterpart in the DOT." SSR 82-61. In such situations, "it may be necessary to utilize the services of a vocational specialist or vocational expert." *Id.* "[A]n adjudicator can deny a claim at step 4 where the claimant remains capable of performing a composite job 'as actually performed,' but an ALJ is not permitted to make an adverse step 4 finding that the claimant remains capable of performing a composite job 'as generally performed.'" *Burgess v. Soc. Sec. Admin.*, No. 3:15-CV-00701, 2016 WL 5800467, at *4 (M.D. Tenn. Sept. 30, 2016) (quoting POMS DI 25005.020(B), *available at* 2011 WL 4753471).

The Commissioner says Johnson's argument must fail because he declined to raise any such concern at the hearing, but this argument misses the mark—indeed, there seemed no confusion at the hearing as to how the VE characterized Johnson's past work. *See* (Tr. 125) (classifying Johnson's past work "as a production worker, DOT 706.687-010. Unskilled, SVP 2. Light per the DOT, medium per the claimant"). Johnson's description of his past work aligns closely with the DOT's description of 'production assembler'[1] as well. *Compare* (Tr. 106-09), *with* DOT 706.687-010, *available at* 1991 WL 679074 ("Performs repetitive bench or line assembly operations to mass-produce products, such as automobile or tractor radiators, blower wheels, refrigerators, or gas stoves: Places parts in specified relationship to each other. . . . May tend to machines, such as arbor presses or riveting machines, to perform force fitting or fastening operations on assembly line.").

---

[1] The ALJ and the VE refer to the DOT classification 'production assembler' as a 'production worker' at the hearing. For ease of reference, I duplicate that practice for the remainder of this opinion.

15

Rather, Johnson's composite-job argument arises from the ALJ's comment that his description of past work "sounds like you were doing two different jobs," production worker and inspector. (Tr. 107). In Johnson's view, this confusion rendered language in the ALJ's written opinion—which describes Johnson's past work as an "inspector" rather than production worker—erroneously ambiguous.

The record does not endorse Johnson's viewpoint on this question. Despite the ALJ's apparent confusion at that juncture of the hearing at issue, Johnson quickly clarified that the inspections he performed were superficial: "You [are] just looking at it," rather than using "precision measuring instruments" or following blueprints or special measurements. (Tr. 107-08). Having heard this testimony, VE did not waffle in classifying the job; he gave a straightforward opinion that Johnson had worked as a "production worker." (Tr. 125). Significantly Johnson does not make any persuasive attempt to explain why Johnson's job was 'composite.' He suggests that the job tasks Johnson identified "are contained in the description of two separate job titles: production worker and inspector," (Doc. 16 at ID 609), when in fact each element is contemplated entirely within the 'production worker' job description. *Compare, e.g.*, (Tr. 106) (noting that "at the end" of his tenure at his factory job, when he was working at the end of the line, "[t]he parts come down, right, left. I was doing left. Take it off, put it on the stand, blow it off, turn around, tack it on the right container"), *with* DOT 706.687-010 ("May work on line where tasks vary as different model of same article moves along line."). The guidance Johnson cites from the Commissioner's Program Operation Manual System ("POMS")—that is, "if you can accurately describe the main duties of [prior relevant work] only by considering

multiple DOT occupations, the claimant may have performed a composite job," POMS DI § 25005.020—proves inapposite where, as here, one can accurately describe Johnson's prior work merely by reference to the DOT's definition of 'production worker.' And because Johnson's past work was not a composite job, the fact he performed it "at the medium level of exertion," (Doc. 16 at ID 609), is similarly irrelevant to the validity of the ALJ's Step Four finding. *See Burgess*, 2016 WL 5800467, at *4.

The proper question, therefore, becomes whether identifying Johnson's past work as 'inspector' rather than 'production assembler'—undoubtedly an error—is harmless, and a brief survey of the record shows it is. Johnson's work history shows he worked only one job from March 1984 to June 2013, and that his title at that job was "inspector." (Tr. 224). At the hearing, the VE identified the work as that of a "production worker," and not an inspector per the DOT. (Tr. 125-26). The ALJ, in turn, unambiguously relied on this testimony. (Tr. 95-96). Indeed, the brevity of the ALJ's questioning of the VE at Johnson's hearing, and the fact the VE discussed solely this past work, signals the error in the ALJ's written opinion is typographical ambiguity (*i.e.*, a reference to Johnson's prior job title instead of the applicable DOT description) rather than substantive mistake. *Cf. Stiles v. Barnhart*, 258 F. Supp. 2d 996, 1002 (S.D. Iowa 2003) (finding harmless an "obvious[] . . . clerical error" where the ALJ mistakenly identified the plaintiff's past work as "a laborer, driver or welder" rather than "a house painter"). For these reasons, the Court should reject Johnson's Step-Four argument.

## 2.     The Weight Accorded Dr. Montasir's Opinion

Johnson next contends the ALJ gave short shrift to the opinion of Dr. Montasir, a consultative examiner. He contends that: (i) the ALJ should not have discounted a walking limitation present in Dr. Montasir's assessment, (Doc. 16 at ID 613-16), and (ii) despite crediting the remainder of Dr. Montasir's evaluation, the ALJ nevertheless failed to include his stooping limitation into the RFC, (Doc. 16 at ID 616). The former argument, Johnson suggests, is supported by evidence of record. The latter argument, by contrast, invokes the importance of remanding "[w]here an ALJ fails to accurately and fully incorporate limitations he appears to accept, . . ." (*Id.*).

Evaluating medical source statements requires considering factors such as the nature of the source's examining relationship with the client, 20 C.F.R. § 416.927(c)(1), the source's treatment relationship with the client, *id.* § (c)(2), the supportability of the source's opinion, *id.* § (c)(3), the consistency of the opinion with the record as a whole, *id.* § (c)(4), whether the source is a specialist opining on areas within her specialty, *id.* § (c)(5), as well as "any factors" the claimant or others "bring to [the Commissioner's] attention, or of which [the Commissioner] is aware, which tend to support or contradict the opinion," *id* § (c)(6). The ALJ "will always give good reasons. . . for the weight" given a "*treating* source's opinion." *Id* § (c)(2) (emphasis added). The ALJ, however, need not give 'good reasons' with respect to 'other sources'—rather, he "generally should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome

18

of the case." SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006). There remains an important "distinction between what an adjudicator must consider and what the adjudicator must explain." *Id.*

At the outset, I note that Dr. Montasir was not a treating source, but a consultative examiner. The ALJ therefore needed only provide discussion enough to allow meaningful review of his reasoning for refusing to adopt Dr. Montasir's walking and stooping limitations. This he did, summarizing Dr. Montasir's findings and explaining that he found them *mostly* well-supported and worthy of significant weight. (Tr. 95, 413-16). The exceptions are the limitations Dr. Montasir assessed to Johnson's ability to walk and stoop.

Although Johnson is correct that the ALJ did not directly address and dismiss Dr. Montasir's stooping limitation, this does not mean the ALJ "appear[ed] to accept" that limitation. (Doc. 16 at ID 616); *see Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467-68 (6th Cir. 2004) (refusing to remand on similar facts because "even if an ALJ cited only part of a doctor's report in his decision, the ALJ could still have considered (and rejected) another portion of the same report"); *cf. Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts."). As the Commissioner notes, Dr. Montasir does not address Johnson's ability to stoop in his narrative evaluation, (Tr. 413-16), he simply marks it off in a check-box form, (Tr. 419). Check-box forms—as an evidentiary vessel—punch far below their weight, for they lack

explanation and thus fail to demonstrate medical supportability. *Accord, e.g.*, *Helsel v. Comm'r of Soc. Sec.*, No. 15-13599, 2016 WL 6070085, at *9 (E.D. Mich. Sept. 7, 2016), *report and recommendation adopted,* No. 15-13599, 2016 WL 6030522 (E.D. Mich. Oct. 14, 2016) ("[T]he co-signed report is in check-box format, and thus would prove an impotent addition to the record, boasting little to no persuasive value."); *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566-67 (6th Cir. 2016) (collecting cases that "recognize that the [ALJ] properly gave a check-box form little weight where the physician provided no explanation for the restrictions entered on the forma and cited no supporting objective medical evidence"). The ALJ did not err in disregarding the stooping limitation Dr. Montasir proposed.

Nor did the ALJ err in expressly declining to adopt the walking limitation in Dr. Montasir's opinion, as it was "unduly restrictive and not supported by the record as a whole." (Tr. 95). On appeal, Johnson points to various items in the record that could be read to support such a limitation. (Doc. 16 at ID 614-16) (noting his limited spinal range of motion, objective evidence of deterioration in his spine, and positive straight-leg raise tests). But the ALJ considered this evidence as well. (Tr. 92-95). He observed that, notwithstanding a positive straight-let raise test, Johnson "had a normal gait," "ambulated reasonably well without any aid or orthotics," and "was able to do tandem walk." (Tr. 94). He likewise credited state-agency physician Dr. Daniels—who found Johnson could walk for six of eight hours in a workday—"great weight," a finding Johnson declines to challenge. (Tr. 95, 139). Upon close inspection, the remainder of the record supports the ALJ's conclusions on this matter. *E.g.*, (Tr. 379, 385, 417, 460, 464, 500) (normal or

improving range of motion in shoulders and spine); (Tr. 393, 415, 462) (capacity to walk without evident hindrance). As such, this Court must not "perform a forbidden ritual" and reweigh the evidence. *Albanna v. Comm'r of Soc. Sec.*, No. 15-CV-14264, 2016 WL 7238925, at *12 (E.D. Mich. Nov. 22, 2016), *report and recommendation adopted,* No. 15-14264, 2016 WL 7210715 (E.D. Mich. Dec. 13, 2016); *cf. DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014) (explaining that arguments the ALJ 'cherry picked' the record are "seldom successful because crediting [them] would require a court to re-weigh record evidence").

For these reasons, substantial evidence validates the ALJ's weight assignment, and the Court should decline to remand on such ground.

### 3.    Credibility

Johnson's next argument supposes that the ALJ did not properly engage in the two-pronged test for gauging a claimant's evaluation of pain. (Doc. 16 at ID 616-19). In *Walters v. Commissioner of Social Security*, 127 F.3d 525 (6th Cir. 1997), the Sixth Circuit reiterated its two-pronged test for evaluating claimants' allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Id.* at 527 (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994)). Johnson describes the ALJ's credibility rationale as "generic," and contends he "failed to point out what specific clinical or objective findings are inconsistent" with Johnson's testimony.

(Doc. 16 at ID 617-18). He also avers the ALJ "neither identified particular subjective complaints nor explained how such complaints were inconsistent with the record." (Doc. 16 at ID 618).

Boilerplate credibility analyses are unacceptable because they deprive subsequent reviewers a glimpse into the reason an ALJ did not believe a claimant. By contrast, the ALJ's rationale in this case proves easy to follow: more objective evidence existed to corroborate Johnson's overhead limitations than his sitting, standing, or lifting issues. As the ALJ noted, Johnson seems to have exaggerated his walking and lifting limitations, for Dr. Montasir's opinion shows him with a normal gait, and Dr. Daniels's opinion has him able to lift up to twenty pounds. (Tr. 94-95). Importantly, Johnson contests neither of these particular findings on appeal. The objective evidence—which the ALJ discussed— certainly illustrates the existence of back and shoulder problems, some more severe than others. *E.g.*, (Tr. 317-18, 336, 378, 398-99, 422). Other records, however, document gradual improvement in these conditions over time. *E.g.*, (Tr. 379, 389, 434-36, 439-41, 446-47, 459, 461-63, 480-82, 488-92, 499-502, 505, 507-08, 518). Motor strength remained relatively intact both before and after his shoulder surgery. *E.g.*, (Tr. 94, 383-85, 391, 393, 395, 415, 481, 500, 507). And Johnson's medical records regularly indicated he was less limited in his activities of daily living than he admitted in either his Function Report or his hearing. *E.g.* (Tr. 442, 448, 452, 463-64, 476, 483, 494, 503). The ALJ made explicit reference to most of these exhibits in his discussion of the evidence, (Tr. 92-95); he was entitled to weigh the evidence against Johnson, who held the burden to prove his allegations of disabling conditions. *See Walters*, 127 F.3d at 529 ("[D]uring the first four

steps, the claimant has the burden of proof; . . .”); *see also Estrada v. Comm'r of Soc. Sec.*, No. 16-10524, 2017 WL 4106247, at *9 (E.D. Mich. Aug. 4, 2017), *report and recommendation adopted,* No. 16-10524, 2017 WL 4098888 (E.D. Mich. Sept. 15, 2017) (“Remand is not appropriate where there is substantial evidence to support the ALJ's decision not to fully credit plaintiff's testimony.”); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) (“Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.”).

Put simply, the ALJ supplied a cohesive rationale for his adverse credibility determination, buttressed by substantial evidence, and this Court should not disturb it. *See generally Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (“Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying.” (citing *Walters*, 127 F.3d at 528))

### 4.    Sentence Six

In his final argument, Johnson seeks a Sentence Six remand to consider October 2015 treatment notes from Dr. Rasheed showing his “ongoing low back pain of 9-10/10 in severity with radiation to the lower extremities and inability to walk on his heels, and worse with bending or lifting.” (Doc. 16 at ID 620). This evidence is allegedly new and material because “it was not before the ALJ when he issued his decision in this case,” and “it provides objective evidence of a condition which existed prior to the issuance of the ALJ's decision.” (Doc. 16 at ID 622). “[I]t rebuts many of the ALJ's findings”—for instance, that

23

Listing 1.04 was not met because the record failed to show compromise of a nerve root—and corroborates Johnson's subjective complaints.  (Doc. 16 at ID 622-23). Likewise, Johnson says good cause for failure to produce the document exists because he "retained the undersigned counsel following the denial by the ALJ who immediately sought and obtained the new evidence submitted to the Appeals Counsel." (Tr. 623).

Remand under Sentence Six is not appropriate unless the claimant shows: (1) "the evidence at issue is both 'new' and 'material,'" and (2) "there is 'good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Hollon ex. rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)). Evidence is new only if "it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). It is material only if "there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). And one shows good cause by "demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984) (per curiam)). "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

Johnson cannot prevail under Sentence Six because he can show neither that there was good cause for failure to produce Dr. Rasheed's most recent entry in the record, nor

that the entry is material. Good cause does not exist because Dr. Rasheed had previously treated Johnson, and Johnson's prior counsel could have obtained similar evidence within the timeframe necessary for submission at the appropriate administrative level. *Accord, e.g.*, *Firth v. Comm'r of Soc. Sec.*, No. 2:16-CV-14165, 2017 WL 4169632, at *8 (E.D. Mich. July 27, 2017), *report and recommendation adopted,* No. 16-14165, 2017 WL 4163684 (E.D. Mich. Sept. 20, 2017) ("[Claimant] was represented at the time of the hearing, and may not now capitalize on his counsel's past failure to supplement the record."); *Taylor v. Comm'r of Soc. Sec.*, 43 F. App'x 941, 943 (6th Cir. 2002) ("[T]here is absolutely no statutory or decisional authority for [Plaintiff's] unstated, but unmistakable, premise that the alleged incompetence of [her] first attorney constitutes 'good cause' in this context."); *see also Hairston v. Comm'r of Soc. Sec.*, No. 14-13218, 2015 WL 4633935, at *5 (E.D. Mich. Aug. 3, 2015) ("[T]his court has consistently declined to find that attorney incompetence, neglect, or error in failing to timely obtain and submit medical evidence constitutes 'good cause' for purposes of a sentence six remand."); *Jackson v. Comm'r of Soc. Sec.*, No. 07-14184, 2009 WL 612343, at *3 (E.D. Mich. Mar. 6, 2009) ("Mistakes by an attorney are not considered to be 'good cause' for purposes of a remand under Sentence Six."); *cf. Martinez v. Comm'r of Soc. Sec.*, No. 1:15-CV-605, 2016 WL 2907844, at *7 (W.D. Mich. May 19, 2016) ("The good cause requirement is not met by the solicitation of a medical opinion to contest the ALJ's decision.").

Even if good cause existed, the evidence is independently immaterial as well: The new objective evidence and the prelude thereto, (Tr. 78-83), merely "confirms" findings from Johnson's 2012 MRI. (Doc. 16 at ID 622); *see Casey v. Sec'y of Health & Human*

*Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (material evidence will show a "marked departure from previous examinations"). The other portion of recently submitted evidence, (Tr. 534-43), consists of a check-box form which, as discussed at some length above, is immaterial because it supplies no rationale or narrative explanation for its findings, and thus offers no promise of a different result on remand. *Accord, e.g.*, *Ellars*, 647 F. App'x at 566-67.

For these reasons, a Sentence Six remand remains unwarranted, and the Court should decline to honor Johnson's request on this count.

### H.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Johnson's Motion for Summary Judgment, (Doc. 16), be **DENIED**, the Commissioner's Motion, (Doc. 18), be **GRANTED**, and this case be **AFFIRMED**.

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have

to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  December 20, 2017  S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: December 20, 2017  By s/Kristen Castaneda
Case Manager